

UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

NORTHERN DIVISION

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| PURIFICACION A. FE STIRCHERZ, | \* | CIV 07-1006 |
| Plaintiff, | \* | |
| -vs- | \* | ORDER AND OPINION |
| OEM WORLDWIDE, L.L.C., | \* | |
| Defendant. | \* | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Plaintiff, Purificacion A. Fe Stircherz ("Stircherz"), was terminated from her employment with OEM Worldwide, L.L.C. ("OEM") on September 16, 2005. Following her termination, Stircherz timely filed a complaint accusing OEM of (1) racial or ethnic (or both) discrimination resulting in a hostile work environment (Stircherz is a Filipino woman); (2) retaliation; (3) intentional infliction of emotional distress; and (4) wrongful discharge. OEM filed a motion for summary judgment on all four claims. The first two claims are to be determined under federal law and the third and fourth claims are to be determined under South Dakota law. The fourth claim of "wrongful discharge" could also encompass a termination resulting from racial or ethnic discrimination and, in that sense, is a claim arising under federal law.

Title VII makes it unlawful for an employer to discriminate against an employee such as plaintiff on the basis of, *inter alia*, the individual's race. 42 U.S.C. §20003-2(a)(1).

Summary judgment is proper where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c) and Donaho v. FMC Corporation, 74 F.3d 894, 898 (8th Cir. 1996). The United States Supreme Court has held that:

> The plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

Celotex Corp. v. Catrett, 477 U.S. 317, 322-323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). "A material fact dispute is genuine if the evidence is sufficient to allow a reasonable jury to return a verdict for the non-moving party." Landon v. Northwest Airlines, Inc., 72 F.3d 620, 634 (8th Cir. 1995).

As a general proposition, under federal law, unlike South Dakota law, summary judgment is a favored procedure. *Compare* Celotex v. Catrett, 477 U.S. at 327, 106 S.Ct. at 2555 ("Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action'") and Wilson v. Great Northern Ry. Co., 157 NW2d 19, 22 (S.D. 1968) ("Summary judgment is generally not feasible in negligence cases").

In considering the motion for summary judgment, this court must view the facts in the light most favorable to the nonmoving party and give the nonmoving party (here, the plaintiff) the benefit of all reasonable inferences that can be drawn from the facts. Donaho v. FMC Corporation, 74 F.3d 894, 897-898 (8th Cir. 1996). The court will follow that directive.

We also know that summary judgments should seldom be granted in discrimination cases, cases where inferences are often the basis of the claim, and "summary judgment should not be granted unless the evidence could not support any reasonable inference" of discrimination. Lynn v. Deaconess Med. Ctr.-West Campus, 160 F.3d 484, 486-87 (8th Cir. 1998). *See also* Gill v. Reorganized School Dist. R-6, Festus, Mo., 32 F.3d 376, 377 (8th Cir. 1994) ("apply the standard with caution").

We know that Stircherz may defeat the summary judgment motion in one of two ways. First, she may present direct evidence of discrimination which means evidence showing a specific link between the alleged discriminatory animus, here racial or ethnic discrimination, and her termination. The evidence must be sufficient to allow a reasonable fact finder to find that the discrimination actually motivated the termination. In this case, could a jury reasonably conclude that Stircherz suffered any adverse employment action? The answer, of course, is "yes" since she was terminated from her employment. Is there direct evidence by which a jury could reasonably conclude that the actions of her employer, OEM, were motivated by racial or ethnic discrimination? The answer to the last question is clearly "no."

Lacking direct evidence of discrimination, Stircherz may still survive the summary judgment motion by creating an inference of unlawful discrimination under the burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

There was some previous thought that Desert Palace, Inc. v. Costa, 539 U.S. 90, 123 S.Ct. 2148, 156 L.Ed.2d 84 (2003), a case that interpreted the Civil Rights Act of 1991, broadened the test of McDonnell Douglas to require an examination of not only whether there is direct evidence of discrimination but also an examination of whether there is circumstantial evidence of discrimination. There is no need to address that issue here since, in the Eighth Circuit, the Desert Palace decision does not affect the proper

3

analysis of motions for summary judgment under Title VII. Griffith v. City of Des Moines, 387 F.3d 733, 736 (8th Cir. 2004). Desert Palace, as we know, involved jury instructions during a trial.

> McDonnell Douglas should be applied at this stage of the case. This means that:
>
> a plaintiff may survive the defendant's motion for summary judgment in one of two ways. The first is by proof of 'direct evidence' of discrimination. Direct evidence in this context is not the converse of circumstantial evidence, as many seem to assume. Rather, direct evidence is evidence 'showing a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated' the adverse employment action. *Thomas v. First Nat'l. Bank of Wayne*, 111 F.3d 64, 66 (8th Cir. 1997). Thus, 'direct' refers to the causal strength of the proof, not whether it is 'circumstantial' evidence. A plaintiff with strong (direct) evidence that illegal discrimination motivated the employer's adverse action does not need the three-part *McDonnell Douglas* analysis to get to the jury, regardless of whether his strong evidence is circumstantial. But if the plaintiff lacks evidence that clearly points to the presence of an illegal motive, he must avoid summary judgment by creating the requisite inference of unlawful discrimination through the *McDonnell Douglas* analysis, including sufficient evidence of pretext . . . This formulation is entirely consistent with *Desert Palace*. Thus, we conclude that *Desert Palace* had no impact on prior Eighth Circuit summary judgment decisions.

Griffith, 387 F.3rd at 736.

Stircherz bears the burden of establishing a *prima facie* case of discrimination.

A "minimal evidentiary showing satisfies a plaintiff's burden of production" at the *prima facie* stage of this case. Pope v. ESA Services, Inc., 406 F.3d 1001, 1007 (8th Cir. 2005). At this stage, the plaintiff's burden "is not onerous." Tex. Dept. of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981).

In considering a *prima facie* case for racial discrimination claims, a "plaintiff must show only that he possesses the basic skills necessary for performance of the job,"

4

not that he was doing it satisfactorily. Slattery v. Swiss Reinsurance Am. Corp., 248 F.3d 87, 92 (2nd Cir. 2001) (alteration omitted) (quoted with approval in McGinnis v. Union Pacific Railroad, 496 F.3d 868, 874 (8th Cir. 2007). It would be error to apply a higher standard than required to establish a *prima facie* case. The four factors to establish a *prima facie* case are: (1) the employee is within the protected class or group, (2) was qualified to perform her job or, put in another fashion, was meeting the legitimate expectations of her employer, (3) suffered an adverse employment action, and (4) has circumstances which give rise to an inference of discrimination. Williams v. Ford Motor Co., 14 F.3d 1305, 1308 (8th Cir. 1994). With respect to the fourth prong, the claimant need not show in a discrimination case involving allegations of racial discrimination that she was replaced by someone of another race to establish a *prima facie* case.

Stircherz is clearly within the protected class and she suffered an adverse employment action. She was terminated. As to whether Stircherz was qualified to perform her job, there is no doubt that Stircherz was *initially* qualified to perform her job. This then would provide a rebuttable presumption that discrimination has occurred but only upon showing that a similarly situated employee was not treated the same by the employer. The tests to determine whether Stircherz was "similarly situated" to non-Filipino employees vary at each stage of a McDonnell Douglas analysis. As already explained, at the *prima facie* stage, the test is "not onerous." However, at the third stage (i.e. to prove pretext), the test becomes "rigorous." Williams, 4 F.3d at 1308.

Although it is more than highly questionable whether any similarly situated employee of OEM was treated differently than Stircherz, I am assuming, for the purposes of this motion, that Stircherz has made out a *prima facie* case. We know that once a plaintiff has made out a *prima facie* case, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions. McDonnell

Douglas, 411 U.S. at 802 (1973). If the employer has shown a legitimate and nondiscriminatory reason for the termination, the burden of production then shifts back to the plaintiff to show that the reason or reasons proffered by the employer are pretexts for unlawful discrimination. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507-08 (1993).

As noted above, Stircherz was initially qualified for her position with OEM. However, this changed in mid-2004 when OEM's contract with Cardiac Science ended. Cardiac Science through OEM provided highly repetitive work for Stircherz which she was easily able to perform to the satisfaction of her employer. With the termination of that contract came the termination of the highly repetitive work as well. Stircherz's work productivity declined as more flexible work was demanded of her. A performance review in October of 2004 showed that she needed to improve her job skills in at least four areas. Stircherz was qualified to perform one repetitive operation but, in the opinion of OEM, was unable to perform multiple operations each day; she thus, according to OEM, could not meet the reasonable requirements of her employment. Courts do not act as super-personnel departments to review the wisdom or fairness of the employer's decision to terminate an employee. Wittenburg v. Am. Express Fin. Advisors, Inc., 464 F.3d 831, 836 (8th Cir. 2006).

OEM has clearly set forth more than one legitimate and nondiscriminatory explanation for its decision to terminate Stircherz. With that showing having been made, Stricherz must show that the OEM explanations are merely a pretext for racial discrimination.

There is no evidence that the proffered reasons for the termination were pretextual. In this case, her termination for declining work productivity does not appear to be a pretext. She was fired for not doing her job to a level expected of her by her employer. "To prove pretext, the employee must do more than show that the

employment action was ill-advised or unwise, but rather must show that the employer has offered a 'phony excuse.'" Henderson v. Ford Motor Co., 403 F.3d 1026, 1034 (8th Cir. 2005). To put it another way, whether or not OEM was correct in their belief that Stircherz could not perform her new duties is not the issue.

Title VII has been interpreted to provide a cause of action for discrimination "[w]hen the workplace is permeated with 'discriminatory intimidation, ridicule, and insult that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993). It must be assumed that the claimed harassment of Stircherz was unwelcome. It is not to be assumed that the claimed harassment was based on race and that is a requirement to support recovery for racial harassment under Title VII. Hall v. Gus Constr. Co., 842 F.2d 1010, 1013 (8th Cir. 1988).

Harassment based on a plaintiff's race, in violation of Title VII, is actionable when that harassment is "so 'severe or pervasive' as to 'alter the conditions of the victim's employment and create an abusive working environment.'" Faragher v. City of Boca Raton, 524 U.S. 775, 786, 118 S.Ct. 2275, 2283 (1998) (quoting from Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 67 (1986)). To be actionable, harassment "must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." Faragher, 524 U.S. at 787. Courts have been directed "to determine whether an environment is sufficiently hostile or abusive by 'looking at all the circumstances,' including the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Id.*


At this stage, the court must, of course, accept as true the allegations of Stircherz as to rude and intimidating conduct by her co-worker(s). However, the effect of the conduct more closely resembles the "trivial harms" identified in Burlington Northern and Santa Fe Railway Co. v. White, 548 U.S. 53 (2006), which the Supreme Court found not actionable in considering claims of this nature:

> We speak of *material* adversity because we believe it is important to separate significant from trivial harms. Title VII, we have said, does not set forth 'a general civility code for the American workplace.' An employee's decision to report discriminatory behavior cannot immunize the employee from those petty slights or minor annoyances that often take place at work and that all employees experience. The anti-retaliation provision seeks to prevent employer interference with 'unfettered access' to Title VII's remedial mechanisms. It does so by prohibiting employer actions that are likely 'to deter victims of discrimination from complaining to the EEOC,' the courts, and their employers. And normally petty slights, minor annoyances, and simple lack of good manners will not create such deterrence.

548 U.S. at 68 (internal quotations and citations omitted).

These same observations apply to claims of harassment based on race.

White also makes it clear that any question as to judging harm to an employee must be an objective test, i.e. the reactions of a reasonable employee. 548 U.S. at 68.

The court recognizes that Stircherz need not show that she was exposed continually to harassment based on her race and that she need not show that the harassment was explicitly racial in nature. Smith v. St. Louis University, 109 F.3d 1261, 1264-65 (8th Cir. 1997). She need not show that she was caused any tangible psychological injury. Harris v. Forklift Sys., Inc., 510 U.S. 17, 22, 114 S.Ct. 367, 371, 126 L.Ed.2d 295 (1993).

We have the general conclusory allegation in plaintiff's complaint in this action that she was subjected to "racial discrimination." There is no evidence of any kind to support this. She points to no similarly situated non-Filipino employee who was treated differently. In fact, when asked if the co-worker accused of harassing Stircherz "talked that way to everybody" Stircherz responded: "Yeah. That's how I thought."

While the conduct cited by Stircherz may have resulted in a frustrating work situation, it was not, as a matter of law, so severe or pervasive as to have affected a term, condition, or privilege of her employment. *See* Austin v. Minnesota Min., Mfg. Co., 193 F.3d 992 (8th Cir. 1999) (holding that the embarrassment occasioned by posting of derogatory flyer and distribution of plaintiff's test results were not sufficient to establish hostile work environment claim), and Scusa v. Nestle U.S.A. Co., 181 F.3d 958, 965-67 (8th Cir.1999) (observing that unpleasant conduct and rude comments were not so severe or pervasive as to have altered conditions of plaintiff's employment). As a matter of law, Stircherz has not set forth facts which objectively rise to the level of abusiveness required to create a *prima facie* case of a hostile work environment.

Furthermore, as a matter of law, Stircherz fails to show she was retaliated against for undertaking a legally protected activity. She fails to show any nexus between her alleged complaint and her termination.

Her complaint was lodged with OEM nearly six weeks prior to her termination. This undisputed fact is entitled to some significance. We know that "the further in proximity the decision to terminate is from the protected activity, the less suspect the decision to terminate becomes." E.E.O.C. v. Kohler Co., 335 F.3d 766 (8th Cir. 2003) (citing Kipp v. Missouri Highway and Transp. Comm'n, 280 F.3d 893 (8th Cir. 2002)). In the latter cited case, a similar time frame was in question (approximately eight weeks) and it was determined that such was long enough to dilute any inference of a causal link between the complaint and termination. *Id.* at 898.

However, even if this were not a sufficient amount of time to sever the causal link, OEM has nonetheless met its burden as outlined in Manning v. Metropolitan Life Ins. Co., Inc., 127 F.3d 686, 692 (8th Cir. 1997), which tells us that once the plaintiff establishes *prima facie* retaliation, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions, and, if the employer meets that burden, the presumption of retaliation disappears. Even assuming, *arguendo,* that Stircherz established *prima facie* retaliation, given the documented reports of both her decline in productivity and efficiency and the incident roughly two weeks before her termination (where Stircherz was the subject of an "employee documentation" for being

assigned a task at 7:00 a.m. which she did not start until 7:45 a.m), the defendant has met this burden, whether or not it was required to do so, and extinguished the retaliation claim.

The record in this case demonstrates that Stircherz has no strong or direct evidence of illegal discrimination of any kind. Nor does she have any evidence of any illegal motivation or pretext.

As we know, a retaliatory discharge claim may be advanced even if the underlying discrimination complaint is not meritorious. However, there is not enough evidence to make the retaliation charge even possibly meritorious and, as such, the charge fails on this front as well.

In order for her to prevail on her intentional infliction of emotional distress claim under South Dakota law, Stircherz must, first of all, prove that the accusatory acts amount to extreme and outrageous conduct. <u>Petersen v. Sioux Valley Hosp. Ass'n</u>, 486 NW 2d 516, 518 (S.D. 1992). The only incident that she could reasonably rely on that could be described as "extreme" or "outrageous," is when she was allegedly called a "fucking minority" on at least one occasion by a co-employee. Sporadic or isolated incidents of racially motivated harassment are not enough to qualify as extreme or outrageous. A pattern of such behavior may be enough to amount to such, but that is not the case here.

Moreover, Stircherz essentially alleges that the conduct of OEM was the same both before and after Stircherz filed her EEOC complaint. Instead of citing any specific incident to base this claim on, she relies on OEM's general inaction in response to her complaints in holding OEM liable for inflicting her alleged emotional distress. First, even if she was called a "fucking minority" multiple times, these insults would not add up to a "campaign of harassment" necessary to hold OEM liable for those actions pursuant to <u>Gus Const. Co, Inc.</u>, 842 F.2d at 1016. Second, OEM's claimed inaction is a nonissue because documentation exists showing the employee who made the derogatory racial comments to Stircherz soon thereafter voluntary terminated her employment with OEM. There was no co-employee "on board" for OEM to hold accountable or to take action against.

To present a claim for intentional infliction of emotional distress, Stircherz must be able to point to evidence that there was an intent on the part of OEM to cause her severe emotional distress or that OEM recklessly caused severe emotional distress, that the conduct of OEM was the cause-in-fact of her injuries, and that she suffered an extreme disabling emotional response to the conduct of OEM. Reckless conduct is described as a deliberate disregard of a high degree of probability that the emotional distress will follow. See Wangen v. Knudson, 428 NW 2d 242, 248 (SD 1988). There is not the slightest indication that any of these requirements could be met. The claim has no merit and there are no facts to support any such claim.

Finally, Stircherz claims that she was wrongfully discharged in violation of South Dakota's public policy:

> a cause of action for wrongful discharge arises on behalf of an employee where an employer's motivation for termination contravenes a clear mandate of public policy. To state a cause of action under this exception, the employee must plead and prove that a substantial public policy may have been violated.

Niesent v. Homestake Min. Co. of California, 505 NW 2d 781, 783 (S.D.1993) (deciding whether employer's motivation for discharging employee was retaliation for filing workers' compensation claim was an issue of fact, precluding summary judgment in a wrongful discharge claim). Stircherz does not state what specific public policy or policies she feels were violated by her termination. She makes merely a conclusory allegation providing no merit outside of that allegation. Thus, without such a statement and at least some evidence, this claim fails as well.

Stircherz has failed to create any "trial-worthy issues" giving rise to an inference of racial or ethnic discrimination. See Habib v. Nations Bank, 279 F.3d 563, 566 (8th Cir. 2001) (elements of *prima facie* case), and Moody v. St. Charles County, 23 F.3d 1410, 1412 (8th Cir. 1994), (to defeat summary judgment, plaintiff must substantiate allegations with sufficient probative evidence that would allow a finding in the plaintiff's favor on more than just speculation). All that is present here are bare unsupported allegations. As a matter of law, none of that is sufficient.

There is no direct or circumstantial evidence of any harassment based on race or ethnicity. Nor is there evidence of a hostile work environment based on race. Prohibited conduct must, in an objective sense, be extreme and not merely rude or unpleasant.

There are no genuine issues of material fact and the motion for a summary judgment should be granted.

Now, therefore,

IT IS ORDERED, as follows:

1) The motion (Doc. 9) for a summary judgment is granted, there being no genuine issue of material fact.

2) Costs shall be taxed.

3) The telephonic hearing now set for November 24 is canceled.

Dated this 20th day of November, 2008

BY THE COURT:

CHARLES B. KORNMANN
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK

BY: _____
DEPUTY
(SEAL)